IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JULIE DENISE HELMS,   } | |
| } | |
| Plaintiff,   } | |
| } | |
| v.   } | Civil Action No.: 2:13-CV-01894-RDP |
| } | |
| CAROLYN W. COLVIN,   } | |
| Acting Commissioner of Social Security,   } | |
| } | |
| Defendant.   } | |

**MEMORANDUM OF DECISION**

Plaintiff Julie Denise Helms ("Plaintiff") brings this action pursuant to Title II of Section 205(g) and Title XVI of Section 1621(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  *See* 42 U.S.C. §§ 405(g) and 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

I.      **Proceedings Below**

This action arises from Plaintiff's application for disability and DIB dated March 22, 2010.  Plaintiff also filed an application for SSI dated May 28, 2010.  In both applications Plaintiff alleges her disability began on September 1, 2009. (Tr. 137, 144).  The Social Security Administration initially denied Plaintiff's applications on October 20, 2010.  (Tr. 66, 67). Plaintiff subsequently requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. 125-29).  The hearing was held on April 9, 2012, via video-conference in

Birmingham, Alabama.  (Tr. 34-65).  Plaintiff appeared in Gadsden, Alabama, and was accompanied by her attorney.  (*Id*).  Also present at the hearing was a Vocational Expert ("VE"). (*Id.*).

In her decision dated April 19, 2012, the ALJ found Plaintiff was not disabled under sections 216(i) and 223(d) of the Act.  (Tr. 21-9).  Furthermore, the ALJ found Plaintiff was not disabled under section 1614(a)(3)(A) of the Act.  (Tr. 29).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making that decision the final decision of the Commissioner, and a proper subject of this court's appellate review.  (Tr. 1).

## II.     The Evidentiary Record

At the time of the hearing, Plaintiff was forty-three years old.  (Tr. 39).  Her highest level of education consisted of receiving a GED.  *Id*.  Plaintiff has alleged her disability began on September 1, 2009 due to bulging discs, degenerative disc disease, sciatica, diabetes, chronic obstructive pulmonary disease ("COPD"), chronic bouts of pneumonia, multiple joint pain, and spinal disorders. (Tr. 177, 181).  Plaintiff previously worked as a fast food worker, cashier and checker, printer, and billing supervisor.  (Tr. 57-58, 182-183, 189). Plaintiff's last day of work was February 2, 2010 due to pain resulting from standing as a cashier and lifting objects.  (Tr. 39, 182).

In her applications for disability benefits, Plaintiff noted that her daily activities include preparing meals and doing light household chores, such as washing dishes and laundry. (Tr. 206-8).  Plaintiff further noted that she is able to go out alone and walk outside once or twice each day, shop in stores for groceries at least one time each week (usually accompanied by her father),

and effectively use money.[1] (Tr. 209). Plaintiff's hobbies include reading, cross-stitch, television, and ceramics. (Tr. 210).

When discussing her pain with the ALJ, Plaintiff rated her pain, on an average day, as a seven on a ten point scale. (Tr. 47). When asked about her daily activities, Plaintiff stated she can drive; however, she indicated that she gets "uncomfortable" and has back pain if she drives or rides in a vehicle for a distance of twenty to thirty miles. (Tr. 42).

Plaintiff's past medical history ranges from 2008 to 2010. (Tr. 186). There is a gap in Plaintiff's medical appointments between August 2009 and May 2010 which she attributes to a lack of medical insurance.[2] (Tr. 45).

In approximately June 2008, Plaintiff was evaluated for back and joint pain, chronic pneumonia, diabetes, continual elevated blood counts, and breast masses. *Id.* There is a progress note by Dr. John Davis which includes an assessment of folliculitis, diabetes mellitus, breast mass, hypertension, obesity, and tinea corporis. (Tr. 331). Plaintiff was prescribed Lotrmine, Doxycycline, and Maxzide. Plaintiff was instructed to have a low sodium and 1200 calorie diet. *Id.* Plaintiff was referred for a mammogram, which resulted in an assessment of "[p]robably benign." (Tr. 331, 333).

In September 2010, she was treated for pneumonia. (Tr. 186). Dr. Davis made an assessment of pneumonia, nocturia, hypertension, ongoing tobacco abuse, leukocytosis, closed fracture of one or more phalanges of foot, acute pain due to trauma in the left foot, home accidents, walking, and chronic pain syndrome. (Tr. 350). Dr. Davis's assessment also states

---

[1] Plaintiff identified that she could use money to pay bills, handle a savings account, count change (presumably coins), and use a checkbook and money order forms. (Tr. 209).

[2] Plaintiff stated that she used Aleve to address any pain symptoms during this period. (Tr. 46). Plaintiff further stated that the she sought medical advice again in 2010 after her husband "got a job where he had insurance." *Id.*

that Plaintiff's pneumonia was left lower lobe pneumonia, her hypertension was under good control with the current regimen, her closed fracture of one or more phalanges of foot should have initial strapping of the fifth and fourth toes, and she should use a hard soled shoe. *Id.* Plaintiff was also prescribed Robitussin, Phosphate, Azithromycin, Amoxil, and Proventil. (Tr. 350-1).

In August 2010, Dr. Donnellan examined Plaintiff in connection with her disability application. (Tr. 265). He found the following concerning Plaintiff: she was not in acute distress; she ambulated without difficulty; she was able to get up and out of the chair and on and off the exam table without difficulty; she had no joint effusion, crepitus, swelling, or deformity; her gait was normal; she did not require an assistive device; she could walk on her heels and toes but could not squat; she could perform heel-to-toe with some imbalance; her grip strength and motor strength were both 5/5; she had no muscle atrophy; and her range of motion was normal throughout except for some reduced range of motion in her lumbar spine. (Tr. 267-68). A sensory exam showed slightly decreased sensation to light touch in her right leg, and her cranial nerves were intact. *Id.* Dr. Donnellan opined that Plaintiff could stand and walk for four to six hours in an eight hour day taking frequent breaks, lift and carry no more than ten pounds occasionally, would have postural limitations including crouching, bending, stooping, climbing and crawling, and that no environmental or manipulative limitations applied to her. (Tr. 269).

During the hearing, the ALJ posed hypothetical questions to the VE. (Tr. 57). The hypothetical questions began with the most intensive to least intensive work schedule and use of physical abilities. (Tr. 58-62). In the first hypothetical, the ALJ directed the VE to assume Plaintiff could stand and sit for approximately six hours in an eight-hour day, lift and carry ten to twenty pounds, was unable to climb ladders, ropes, or scaffolding, could occasionally balance,

4

stoop, kneel, crouch, and crawl, was required to avoid exposure to hazardous machinery, unprotected heights, and could occasionally bend. (Tr. 58). The ALJ then asked the VE, in light of these conditions applied, whether Plaintiff could perform past relevant work. *Id.* The VE stated that Plaintiff could perform past relevant work as a billing supervisor as well as the cashier/checker. (Tr. 59). The ALJ then posed a second hypothetical question: if the same limitations in the first hypothetical applied, and assuming further a condition of sit/stand/walk four to six hours in an eight-hour workday,[3] whether Plaintiff could perform her past relevant work. *Id.* Again, the VE stated that the person could perform the work of billing supervisor as well as the cashier/checker, and that this type of work is found in the national economy. *Id.* In a third hypothetical, the ALJ directed the VE to assume an individual of the same age, educational background, and past relevant work experience as Plaintiff and directed the VE to further assume the individual could stand or walk two hours in an eight-hour day; lift or carry ten pounds occasionally and less than ten pounds frequently. (Tr. 59-60). Again, the VE stated that the person could perform the work of a billing supervisor and that this type of work was found in the national economy. (Tr. 60). Then additional hypothetical scenarios were posed by the ALJ to the VE. Only after the hypothetical included the limitation that the individual could only occasionally maintain an eight-hour workday did the VE state that the individual could not find work as a billing supervisor in the national economy. (Tr. 61). The VE stated that generally, "if a person [is] missing up to two or more days a month, up to 24 days a year, then they would not be able to maintain that job." (*Id.*).

Based on the VE's testimony, Plaintiff's testimony, and the entirety of the record, the ALJ determined that Plaintiff's Residual Functional Capacity ("RFC") renders her capable of

---

[3] There is no mention of the weight to be carried during the day.

performing past relevant work as a billing supervisor, and has not been under a disability, as defined in the Act, from September 1, 2009 through the date of her decision on April 19, 2012. (Tr. 29).

### III.     The ALJ's Decision

Disability under the Act is determined utilizing a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id*.  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is

deemed not disabled.  *Id*.  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2014, and has not engaged in substantial gainful activity since her alleged onset date of disability.  (Tr. 23).  The ALJ further determined that Plaintiff has the following severe impairments: dextroscoliosis, COPD, polyarticular arthralgias, chronic pain syndrome, leukocytosis, osteopenia and obesity.  *Id.* The ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments" in the listings.  (Tr. 25).  The ALJ further found that all of Plaintiff's impairments, individually or in combination, are insufficient to qualify her for disability, noting that "[n]o examining or treating medical source has reported that [Plaintiff] has an impairment that medically equals the criteria of a listed impairment."  *Id*.

The ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(b).  (Tr. 26).  The ALJ notes that Plaintiff had certain limitations.  *Id*.  Plaintiff can stand and walk a total of two hours each during an eight-hour workday, can lift/carry ten pounds occasionally and less than ten pounds frequently, and can use the bilateral upper extremities on a frequent basis for fingering and handling.  She can also occasionally balance, crouch, bend, stoop, crawl and climb ramps and stairs, but can never climb ladders,

ropes, or scaffolds.  She must avoid all exposure to hazardous machinery and unprotected heights, as well as concentrated exposure to dusts, flumes, odors, gases, poor ventilation, extreme cold, extreme heat, wetness, humidity, and vibration.  *Id*.  The ALJ found that Plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of her pain were not fully credible to the extent they are inconsistent with her RFC.  *Id.*  After reciting the factors used to make the determination and giving "[Plaintiff] the benefit of the doubt," the ALJ found that Plaintiff is capable of  "performing past relevant work as a billing supervisor" and, therefore, is not disabled under sections 216(i) and 223(d) of the Act.  (Tr. 26, 29).

## IV.     Plaintiff's Argument for Reversal

Plaintiff argues that the ALJ failed to address the opinion of Dr. William Bruce Donnellan, an examining physician, in its entirety, and further claims Dr. Donnellan's findings show she is precluded from being able to undertake any full time work activity.  (Pl's Mem. 3).

## V.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the

decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in reaching that decision. The court addresses Plaintiff's argument below.

### A. The ALJ Properly Considered the Opinion of the Consultative Examining Physician

Plaintiff argues that the ALJ did not consider the entirety of Dr. Donnellan's medical opinion because the ALJ did not state that she would be required to take "frequent breaks." (Pl's Mem. 7). Plaintiff essentially argues that the ALJ should have referred to every aspect of Dr. Donnellan's medical opinion in determining her RFC, and the failure to do so indicates the ALJ did not consider that medical opinion as a whole. This assertion is off the mark. *See Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005).

In *Dyer*, the Eleventh Circuit stated that the ALJ need not "specifically refer to every piece of evidence in th[e] decision" as long as the decision allows the court to conclude that the

9

ALJ considered the medical condition as a whole. *Dyer*, 395 F.3d at 1211. In *Hennes v. Commissioner of Social Security Administration*, the Eleventh Circuit noted that although the ALJ did not specifically mention the claimant's obesity, there was no "rigid requirement" that the ALJ specifically refer to every piece of evidence as long as the decision allows the court to conclude that the ALJ considered the medical conditional as a whole. 130 Fed. App'x. 343, 348 (11th Cir. 2005).

After careful review, the court finds that the ALJ did indeed consider the medical opinion as a whole. *Id.* The ALJ did not err when he failed to expressly and specifically list every aspect of Dr. Donnellan's medical opinion. Again, the ALJ is not required to "specifically refer to every piece of evidence" in the opinion. *See Dyer*, 395 F.3d at 1211. There simply is no "rigid requirement" to catalog every shred of evidence, including the finding that Plaintiff would require breaks. And, to be sure, the ALJ's findings make clear that the need for breaks was incorporated into her RFC determination.

Moreover, the ALJ stated that Dr. Donnellan's medical opinion was given "good weight" and that the opinion was "incorporated" into the determination of Plaintiff's RFC. (Tr. 28). The ALJ also summarized Dr. Donnellan's findings as to Plaintiffs physical capabilities. (Tr. 28, Tr. 269). In fact, the ALJ gave Plaintiff the "benefit of the doubt" when she found that Plaintiff could "stand/walk two hours each day in an eight-hour day," which is in actuality an even more claimant-friendly finding than that of Dr. Donnellan.[4] (Tr. 27).

Additionally, the court finds that the ALJ considered the whole opinion of Dr. Donnellan because the ALJ properly stated both the weight given to his medical opinion, and the reason

---

[4] Dr. Donnellan opined Plaintiff could stand and walk four to six hours each day during an eight-hour workday. (Tr. 27). Therefore the ALJ's use of stand/walk period of two hours a day is more generous to Plaintiff for purposes of determining her RFC. In any event, the ALJ's determination is not in any manner inconsistent with Dr. Donnellan's medial opinion, and is not rendered inconsistent simply because it does not state frequent breaks will be required during an eight-hour workday.

therefore. The court is fully aware that the ALJ is required to "state with particularity the weight [given] different medical opinions and the reasons therefore." *Sharfarz v. Brown*, 825 F. 2d 278, 279 (11th Cir. 1987). Here, the ALJ did indicate the weight she gave to Dr. Donnellan's medical opinion when she stated that "good weight has been placed in the [opinion] of Dr. Donnellan". (Tr. 28). In fact, the ALJ stated that "good weight" was given to the medical opinion of Dr. Donnellan because of the physician's "specialization and expertise in the area of internal medicine." (Tr. 28). Accordingly, the ALJ properly stated "with particularity" the weight given to Dr. Donnellan's opinion[5] and the reasons therefore, thus further demonstrating that the ALJ considered the opinion as a whole. *Sharfaz*, 825 F.2d at 279. Therefore, the ALJ fully "considered" Dr. Donnellan's medical opinion. *Hennes*, 130 F. App'x. at 348.

**VII.   Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this Memorandum of Decision will be entered.

**DONE** and **ORDERED** this March 25, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[5] Medical experts are considered experts in their respective fields, as well as in Social Security disability programs. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p, 1996 WL374180. Opinions of medical experts may be given greater weight than opinions of treating and examining sources as long as there is substantial evidence in the record to support the opinion. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1527(e)(2)(i) and (iii), 416.912(b)(6), 416.927(e)(2)(i) and (iii); SSR 96-6p WL374180; *Crawford*, 363 F.3d at 1159-60 (11th Cir. 2004); *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. App'x. 869, 872-74 (11th Cir. 2011).